Good afternoon, your honors. May it please the court. My name is Carlos Barrios, and I represent the petitioner in this matter. And I think finally what we have here is a very interesting issue. We have an issue that's been lingering for some time, and it's whether Penal Code Section 245 of California is going to be considered a crime involving moral turpitude. Now, it's very important for us to first understand that there's already been a decision with respect to whether Penal Code Section 245 is a crime involving moral turpitude. In matter of who, recently the board indicated that it is a crime involving moral turpitude. Now, in order for us to proceed in this particular venue, we have to determine whether this court owes the board due deference with respect to that particular decision. Now, in Cerrone, which is a decision that came out of the Ninth Circuit in 2014, this court indicated that it will not give due deference where the board decided the elements of a particular crime section. In matter of who, that's exactly what the court did. The board did. The board indicated that the reason that they found that Penal Code Section 245 is a crime involving moral turpitude was because they declared it to be a crime that requires specific intent. Now, that's essentially determining the elements of the case, of the statute. If that's the situation, then under Chevron, this board indicated that it will not give due deference to the board. That being the case, we can proceed to determine whether Penal Code Section 245 is a crime involving moral turpitude. Now, I take the position that it's not, primarily because in order for this particular type of position... But you agree that the first issue we need to get past... Right. ...is whether or not matter of who is entitled to Chevron deference. Correct. So you don't contest the... If we were to find that it's entitled to Chevron deference, you don't contest that matter of who is properly applied to your case, even though it had not been decided and not been relied upon by the board in your case. Well, right. If this court determines that under Chevron, the board should be given due deference, then obviously I run into quite a complication. But based on my analysis, I don't believe that to be the case. The board in rule clearly looked at the elements of the statute. And by doing so, if we then read and reapply Ceron v. Holder, this particular court clearly indicated that the BIA lacks the expertise to be able to identify the elements of the crime. So if that's the case... Are you contending that it misidentified the elements of the crime? ...it's not just interpreted. Right? So at the moment that the board begins to interpret the elements of the crime, that's fine. They can do that. But it then allows this court to essentially reanalyze whether they did it correctly. Because... Are you saying they did it incorrectly? I think so, yes. I think they did. But what's your argument? Well, they declared that the men's rail requirement for Penal Code Section 245 was specific intent. And I don't believe that's the case at all whatsoever. In our particular case, if you look at the original brief filed by the government, the opening brief, it clearly indicates the elements of what took place. We have an individual who was drastically and dramatically under the influence of alcohol, proceeded to drive and committed an offense. Right? And if we then look at the Code Section 245, and we look at Williams, which is a California case, we clearly see that Penal Code Section 245 is not a specific intent crime. It's a general intent crime. Where in lieu does it say that the board believed that this offense, 245A1, involves a specific intent mental state? It would be on my page 11. I'm not sure if that's the particular page that you're going to have, but it's definitely on page 11, and it's the first one, two, three, about the fifth or sixth paragraph down from Section 2, where it says analysis. And that's where you'll see that the board indicated that in order for them to be effective. Right. In this way, we have determined that an assault statute that makes it unlawful for a perpetrator to cause physical injury must possess specific intent. And from that point on, they went on to determine that categorically, Penal Code Section 245 is a crime involving moral turpitude. But we run into a major issue, because in order for you to be convicted of Section 245, you can commit various offenses, including being reckless and including being criminally negligent, which is the case we have. In order for you to be convicted of Penal Code Section 245 under a reckless application, you have to be aware of what took place. I know. On page 11, the language you've read, they're just setting out, not unlike the way we did in Cerrone, the kind of differing poles. On the one hand, when an assault statute, they're basically saying has specific intent. That would be one thing. Conversely, we have held that an assault statute prohibiting a perpetrator from causing injury to another with criminal negligence does not count. So they're kind of saying specific intent, negligence. When they describe where this statute falls on page 14, I don't see the specific intent language. Well, it says here, in other words, the Ninth concluded that in Grajeta, the violation must require a culpable mental greater than, recklessness or criminal negligence. Right. But what's greater than that? That would be below specific intent, wouldn't it? But even to that degree, let's assume that it is below specific intent and it fits right above criminal negligence. That is the case. There must be something in there then where the individual that committed the offense was aware of what was taking place, right? There has to be an awareness. For recklessness, there's got to be awareness. And if you go higher than that, there must be intent or some sort of awareness of what was taking place. In this particular situation, that couldn't be the case because by the very facts of the case, he was completely drunk. How could he be possibly aware of anything in that situation? But we have a statute that we've said we apply the categorical and the modified categorical approach. So what we're looking to is the elements of the conviction and not the underlying facts that gave rise to the conviction. Precisely, right? So in Wu, they went straight for categorical. We don't even see modified in there. So they go straight for categorical and they say this case, this particular code section, on its face, categorically crime involving moral turpitude. And I agree with you. I think they should have gone to the modified. But they didn't. They went straight for the top. And at the top, on its face, they apparently agree that it's supposed to be a crime involving moral turpitude. And I don't think that's the case. I think for us to get there, we may have to go deeper. Now, in my case, that may be the situation. Maybe the facts lend themselves to that. But they didn't go to that situation. They didn't go that far. And so I still take the position that on its face, penal code section 245, based on the way it's written and based on the requirements of the mental state, right, criminal negligence and above, it's not possible for it to be categorically a crime involving moral turpitude. It's just too much. It's overbroad. All sorts of different acts can fit in there. And that's fine. But then we can move on. You just said mental state. They said mental state combined with another aggravating factor. And it's the combination of the two. Why is that wrong in your view? Now, I agree with the theory, right, where you have the mental state and if it's criminal negligence and then you attach an aggravating factor of some sort, then yes, it could be elevated. But then it begs the question, then is that categorically a CIMT or is it modified? I think it should be modified because then you're looking at essentially the guts of the case, which is fine. I do not disagree with the modified approach, but I totally disagree with the categorical application. It's a very blunt statement and it's a blanket application. And I don't think that should be the case. If we're going to look forward, we should look forward. But as I read this, they're saying categorically it's a crime involving moral turpitude because it's got an elevated scienter. It's not quite at the top, but an elevated scienter and an elevated aggravating factor in the underlying conduct. And the combination of those two is what makes it meet the test in SIROM. Why is that wrong categorically? So the question you have, right, it's the question I've had as well. Essentially, right, so they're saying if you have the mens rea or the mens re, it's the same thing. It's on its face, 245 does not lend itself to that. There is nothing in the statute that's written there that allows it to have so many aggravating factors. In fact, one of the portions, it says, or an instrument. I mean, what is that instrument? It could be almost anything, a paperclip? So if it's a paperclip, it's automatically going to be launched? It has to be deadly. Well, not necessarily. The end result must be that, but not the instrument necessarily. So the aggravating factor is what exactly? I get that there's a lot in the middle. There has to be something in the middle that links these two things together. And there's a lot in that middle. It's a very fat middle. And all sorts of things fit in that middle. And that's the problem. Deadly applies to both weapon and instrument in the statute. Precisely. Instruments. What are those instruments? It could be almost anything. An automobile. I'm sorry? An automobile. In my case, it was an automobile. But now we're talking about modified. On its face, right? On its face, it could be any instrument. And again, I go back to the fact that the instrument is deadly. Well, it depends what it is. If I just have a, you know, something sharp and I'm just holding it, it's not deadly. If I throw it at somebody's face, it possibly could be. But that's the problem. It's a very broad application. And that's my concern with it. Well, in any event, I think that's the core of the case. I think you were saying that Will misapplied Chevron. I think that's the core of the case. No, no, no. I said that in order for this court to consider whether Will was wrong or right, we first have to look at Chevron to determine whether Chevron. The first thing that the first step is whether the particular statute is ambiguous or doesn't fit the exact issue in the case. Are you saying that Chevron is a vague issue? It's a vague, ambiguous term. It is, of course it is. And that's been well, if that's so, then why can't Chevron deference be applied to it by the by the administrative agency? Because in Siroli Holder, which is this court's case, the court clearly said the BIA lacks the expertise in identifying the elements of the statute. And for that reason, we cannot give due deference to a BIA decision when it is not in Siroli Holder. It's clear. It's in Siroli Holder. This court held that. And that being the case, this court cannot give due deference. It's allowed to look at it again. And I think that's the position that I think that's what you're asking me, correct? If there are no questions for now, I'll reserve the remainder of my time. I believe I have three minutes. May it please the Court, Robert Tennyson for the government. I don't understand the Petitioner's theory. It seems to be that any time the Board discusses State cases or the elements of the offense in applying the categorical approach to determine whether or not an offense is a crime involving moral turpitude, it's gone wrong. That can't make sense. It makes sense that the Court has to look at the specific statute, the specific elements. In this case, it in fact assumed the elements that this Court sort of highlighted were in the statute in Saron, and has highlighted subsequently in cases such as I guess Vasquez, Vasquez-Gonzalez, and said that these elements rise to the level of a crime involving moral turpitude. That what we've got here is a general intent offense, which the California Supreme Court said was the case in Williams, and this Court has similarly said in cases like Gravelia and Vasquez-Gonzalez, and can look at that and say, okay, it's a general intent offense. It has this other component having to do with what? Mere knowledge of the facts that would lead a reasonable person to determine what the end result would be, right? The risk of harm to another individual. And then said, look, this is not normatively different than a pure recklessness statute that we have found previously to constitute a crime involving moral turpitude. And so, if the Court can't do that, if the board can't evaluate the elements, then how is it supposed to engage in the crime involving moral turpitude determination at all? Even elements that have been set forth already by the Court and that the Board of Immigration Appeals accepts. In any case, this statute here, and the board reasonably found that this statute here, is not a crime involving moral turpitude. It meets the level of crime involving moral turpitude. That is, it has a reprehensible conduct, and that is the likely impact, right? The likelihood of great bodily injury, which is substantial or severe injury to another individual, and that it has a sufficiently culpable mens rea. It, you know, this offense involves the commission, let's see, intentionally committing a violent act. I mean, that's the way it's been described. It's been described by this Court in Gavalia. It's been described by this Court in determining whether this is a crime of violence. That is the mental state. And it reasonably found that it's just, that this general intent offense, which involves this intentional commission of a violent act, is sufficient to be a highly culpable mental state. Let me ask you the same question I asked your opposing counsel, which is, is there any obstacle to applying matter of woe in this case, even though it was not reached or applied by the board? No, Your Honor. The board's decision in matter of woe supersedes the decision that came before it. And even if it didn't, matter of woe would make it futile to send it back because matter of woe has decided categorically what the offense is. Is there any daylight between the BIA's decision in this case and matter of woe that you can detect? The board's decision, and I can grab it over there, seems a little different in its terms than matter of woe. I'd have to go back and think through it because I've been thinking about woe, but I do remember there being some differences between the decisions, yes, that the rationales in the two weren't entirely the same. If this court had, do, if I could. Briefly, uh-huh. Right. Okay. No. There. I don't believe there is. I mean, it's a different take. I would say that the board's focus in this decision was on people v. matter of woe, and it relied on the fact that this statute doesn't involve criminal negligence or mere recklessness, but does have a general intent component. And it relied on that to say, you know, that brings it above the threshold, you know, to be a crime involving matter of due. Coupled with the aggravating. Along with the aggravating. Along with the aggravating. Both of those are in woe and in the decision below. That is correct, Your Honor. Absolutely. But beyond that, there's no reason to think it's any different than, you know, to say that it's a matter of due. I don't think it's any different than woe in any significant fashion. And the government concedes that the first element of Chevron that Judge Bayer was asking about is met that this is ambiguous? Yes, Your Honor. And in fact, this court found that in Saran, and that's part of the reason why it's sent back to the board. All right. This court has no further questions. The government will rest. I suppose the only real issue remains that the government keeps relying on this issue of recklessness. And I agree that the recklessness does lend itself more to determine whether something is a CIMT. But when it comes to recklessness under Williams and several other cases, there has to be some actual awareness. And that's where we start, where it gets really complicated. Because at that point, we're really looking at the person's mental state and the mens rea involved in these particular crimes. And in Williams, they made it clear that for this particular code section, it could be done without any specific intent, obviously, and that it doesn't even require the offender to perceive the injury that's going to occur. That's, in my opinion, substantially under recklessness. I mean, that's pretty clear that it's criminal negligence. I don't see how it arises any further than that. So that's the position I would take. If you have criminal negligence, you can't possibly have a crime involved in well-interpreted. Thank you. Thank you very much. The case of Safarian v. Barr is submitted.
judges: Bea, Collins, Bress